**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**WILLIAM R. DOWNING, JR.**                                        **PLAINTIFF**

     **v.**                        **Case No. 4:15-CV-570-DPM**

**DEPARTMENT OF FINANCE AND**
**ADMINISTRATION, An Agency of**
**the State of Arkansas; BOB HAUGEN, in**
**his Individual and Official Capacity;**
**and DAVID JUSTICE, in his Individual**
**and Official Capacity**                                        **DEFENDANTS**

---

## Brief in Support of Defendants' Motion for Summary Judgment

---

Plaintiff William R. Downing, Jr. alleges that the Arkansas Department of Finance and Administration and two of its managers, Bob Haugen and David Justice, discriminated and retaliated against him on the basis of disability and use of protected leave.  Downing alleges that the Defendants failed to make reasonable accommodations and/or to reinstate him to a comparable position.  Downing brings his claims under Title I of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973 ("the Rehab Act"), and the Family Medical Leave Act of 1993 ("FMLA").  The undisputed facts show that Downing was terminated for a legitimate, non-discriminatory reason.  Downing could not and would not ever be able to perform essential job functions, according to his own doctor, and no reasonable accommodation was available.  This case presents no genuine issue of material fact, and the Defendants are entitled to judgment as a matter of law.

## Factual Background

*Downing's first Warehouse Specialist job.*   In the summer of 2011, Downing applied for a job (Position Number 2207-0041) as a Warehouse Specialist with DFA's Marketing and Redistribution division ("M&R").  *See* Arkansas State Job Application (Aug. 15, 2011), Mot. Summ. J. Ex. 1, at 1.  M&R is a division of DFA's Office of State Procurement that oversees the redistribution and sale of state surplus property between state agencies, tax-supported entities, and the general public.[1]  The Warehouse Specialist position for which Downing applied was responsible for the acquisition, storage, maintenance, and distribution of supplies in a central storage area.  *See* Warehouse Specialist Class Specification, Mot. Summ. J. Ex. 2.  Occasional heavy lifting was required.  *Id.*  Some specific job duties for his particular position included: maintaining the flow of inventory made available to agencies and tax-supported entities; driving large trucks throughout the state to pick up and deliver property; stocking retail sales with commodities; assisting other staff in screening items for internet-based sales; and conducting on-site property inspections to determine the best method for handling the agency's surplus property.  *See* Hiring Freeze Exception Request (July 14, 2011), Mot. Summ. J. Ex. 3.  Downing got the job and started work on September 4, 2011.  *See* OPM Employee Master Data Form (Sept. 8, 2011), Mot. Summ. J. Ex. 4.

*Downing's second Warehouse Specialist job.*   A few months later, another Warehouse Specialist position opened up in M&R.  According to DFA's

---

[1] *See* http://www.dfa.arkansas.gov/offices/procurement/stateSurplus/Pages/default.aspx (last visited Dec. 29, 2016).

Human Resources Administrator, Amy Valentine, this position required all of the knowledge, skills, and responsibilities as any other Warehouse Specialist but also included additional duties related to internet property sales including monitoring the computer system, photographing state surplus items, developing property descriptions, uploading items to a website for sales to the public, and coordinating the shipping or pickup of items sold online. *See* Hiring Freeze Exception Request (Dec. 14, 2011), Mot. Summ. J. Ex. 5; Deposition of Amy Valentine, Mot. Summ. J. Ex. 16, at 36:1-5; 36:25-37:2; 38:3-10. Downing applied for and got the second Warehouse Specialist job in February 2012. *See* Arkansas State Job Application (Feb. 6, 2012), Mot. Summ. J. Ex. 6; OPM Employee Master Data Form (Feb. 8, 2012), Mot. Summ. J. Ex. 7. While there was a new position number for the job (Position Number 2208-0074), Downing's job title (Warehouse Specialist) and pay remained the same. Ex. 7.

Although Downing's new position involved running M&R's internet-based property sales, Downing always worked in the warehouse at least one full day each week in addition to other times in connection with his web sales. Deposition of William R. Downing, Jr., Mot. Summ. J. Ex. 14, at 50:6-9. Downing testified that 60% of his job was "desk work" on the computer and 40% of his job was "warehouse work." *Id.* at 50:6-9, 94:18-95:17. Downing's 2013 Performance Evaluation confirmed that part of his job was to "function as a member of the warehouse team on public sale days and assist the general public with their needs on the sales floor as needed." Mot. Summ. J. Ex. 10 at 6. A January 2014 email from Defendant

3

Haugen, Downing's immediate supervisor, likewise confirmed that Downing's position was not a "light duty" position, and that the web duties were just some of the assigned duties of that position. *See* E-Mail Exchange between Downing and Haugen (Jan. 29, 2014), Mot. Summ. J. Ex. 11.

***Upgrade to Surplus Property Agent.***  In June of 2013, M&R upgraded all Warehouse Specialists to a new job title of "Surplus Property Agent" and gave them a raise, but the job duties remained the same. *See* OPM Employee Master Data Form (June 25, 2013), Mot. Summ. J. Ex. 8; Surplus Property Agent Class Specification, Mot. Summ. J. Ex. 9; Valentine Dep., Ex. 16, at 41:10-25.  The job description for the Surplus Property Agent explained that "[t]his position may require lifting heavy and cumbersome objects."  Ex. 9.  Downing testified that his job functions as a Surplus Property Agent were the same as when he was a Warehouse Specialist.  Downing Dep., Ex. 14, at 99:19-24.

***Hip problems & FMLA leave.***  In 2011, around the same time he started at M&R, Downing began having hip pain that progressively got worse.  Downing Dep., Ex. 14, at 97:23-99:1.  Early in his tenure at M&R, Downing told his manager that he had hip problems and would eventually need a hip replacement.  *Id.* at 98:15-99:1.  On January 17, 2014, Downing submitted a request for FMLA leave from February 7 through May 7, 2014.  Mot. Summ. J. Ex. 12.  DFA granted his request.  Downing Dep., Ex. 14, at 106:23-25.  Downing took the full 12 weeks of FMLA leave allowed by law.  *Id.* at 107:1-3.

***The cane restriction.*** Six weeks after his surgery, Downing's doctor released him to return to work, but Downing had to use a cane for six weeks. *See* Letter from Dr. Charles Barnes (Mar. 21, 2014), Mot. Summ. J. Ex. 13. Downing's managers held a meeting with him and, after some discussion, Justice told Downing that he would not be able to return to work in the M&R warehouse with a cane. Downing Dep., Ex. 14, at 52:19-22; Justice Dep., Ex. 15, at 34:7-24. Justice explained that the cane restriction presented a safety hazard for Downing when working in the warehouse environment. Downing Dep., Ex. 14, at 52:19-22; Justice Dep., Ex. 15, at 34:20-24. Justice was worried that Downing could trip or fall while working in the warehouse and blow his hip out, or that he could injure someone else while trying to get on a forklift or something of that nature. Justice Dep., Ex. 15, at 34:20-24. Justice conferred with Downing's immediate supervisor (Haugen), HR (Valentine), and Office of State Procurement ("OSP") Administrator Jane Benton, who all agreed that it was not feasible for Downing to work in the M&R warehouse with a cane. Deposition of Bob Haugen, Mot. Summ. J. Ex. 17, at 8:12-19. Downing also had an in-person meeting with HR Administrator Valentine regarding his request to return to work with the cane restriction, but HR upheld Justice's decision. *See* Downing Dep., Ex. 14, at 77:10-13; Justice Dep., Ex. 15, at 34:12-17.

***Temporary "light duty" accommodations.*** Twelve weeks after his hip replacement, on May 2, 2014, Downing returned to work with a full release to duty, but he told his managers that he would be unable to perform assigned duties in the warehouse for medical reasons. Haugen Dep., Ex. 17, at 9:4-8, 11:16-12:9, 26:18-

27:1; Downing Dep., Ex. 14, at 119:1-124:21.  His managers met with him to discuss the situation and what accommodations might be available.  Downing Dep., Ex. 14, at 119:1-124:21.  Because the doctor's release did not include any restrictions, M&R management required clarification from Downing's physician.  *Id.* at 12:14-18. Downing did not see his doctor again for almost a month, until June 4, 2014.  *See See* Letter from David Justice to Rick Downing (May 7, 2014), Mot. Summ. J. Ex. 18, at 2 (noting that Downing's appointment was rescheduled from May 29 to June 4, 2014); Letter from Dr. Charles Barnes (June 4, 2014), Mot. Summ. J. Ex. 19.

In the interim—and because Downing had exhausted all available leave options—Justice allowed Downing to return to work with temporary light-duty accommodations until he could get a full release.  *See* Letter from David Justice to Rick Downing (May 7, 2014), Mot. Summ. J. Ex. 18, at 1.  Specifically, from May 7 to June 4, 2014, Justice allowed Downing to work primarily in the office at a desk job four days a week, but he still had to work in the warehouse and assist customers in loading property each Wednesday morning and every Friday.  *Id.*  He also had to "select[] and stag[e] items to photograph, mov[e] item(s) to a secure location and assist[] customers in loading property after a sale," including "physically packaging items to be shipped daily via UPS or truck freight."  *Id.*  "The physical requirements of all these tasks include, but are not limited to, squatting, bending, lifting, pulling, pushing anywhere from 1-100 pounds, or whatever physical activity the specific situation requires."  *Id.*

6

Justice informed Downing on May 7 that, after the temporary light-duty period expired, his position would require one week of primarily web duties and responsibilities, followed by a week of primarily warehouse responsibilities, but that these job assignments were subject to change at Justice's discretion based on the needs of the warehouse.  *Id.*  Justice explained at his deposition that he had determined that a one-week-on, one-week-off schedule for the web posting duties would better serve the needs of the warehouse because it ensured that two Surplus Property Agents would be fully trained on those duties.  An alternating weekly schedule would also allow Downing to get caught up on processing property in the warehouse, which he was behind on.  Justice Dep., Ex. 15, at 48:5-14.

In Justice's May 7 letter, Justice also told Downing that he must provide a "fit for duty" statement from his doctor releasing him to return to work and perform all essential job duties by June 5, 2016.  *Id.* at 1-2.  "Unfortunately, there is not 'light duty' work available in the essential functions of this position."  *Id.*

***Request for job change.***  During this temporary "light duty" period, DFA administrators met with Downing again for a fourth time to discuss his job description and responsibilities and whether he could be accommodated.  Downing Dep., Ex. 14, at 87:14-88:5, 89:20-23, 90:20-91:24; Valentine Dep., Ex. 16, at 17:12-21, 28:10-18; *see also* Ex. 9 (suggesting that this meeting took place on or about May 21, 2014).  Downing's managers were there (Haugen and Justice), along with HR Administrator Valentine and OSP Administrator Benton.  Valentine Dep., Ex. 16, at 17:12-17; 27:6-21.  During this meeting, Downing requested his job duties to be

changed. *Id.* at 29:20-24. "He wanted to work as a full-time web specialist." *Id.* at 30:1-2. He wanted to do nothing but computer work. *Id.* at 32:15-17.

DFA administrators told Downing that the M&R warehouse did not need a full-time web specialist, and that that was not a job they were going to create. *Id.* at 34:24-35:2. The essential duties of Downing's Surplus Property Agent position were warehousing; the internet posting was just a small portion of the job that could be done in a few hours a day. Justice Dep., Ex. 15, at 28:20-29:8. In fact, during Downing's FMLA leave—when another employee managed the web sales— M&R discovered there was a more efficient way of posting property to the web that minimized to 18-20 hours per week the total time required to do internet sales. Justice Dep., Ex. 15, at 49:7-17; 57:15-58:6. And only about six to eight hours of that time each week was actual computer time plugging that information in; the rest of the Surplus Property Agent's time was spent in the warehouse. *Id.* at 93:18-94:16, 96:9-97:4, 102:21-103:2.

**Permanent restrictions.** On June 4, 2014—a month after Downing was informed that he would be terminated if he could not perform all essential job functions—Downing returned to M&R and presented his supervisors with a doctor's note containing permanent job restrictions. *See* Letter from Dr. Charles Barnes (June 4, 2014), Mot. Summ. J. Ex. 19; *see also* Downing Memo (June 4, 2014), Mot. Summ. J. Ex. 20. Downing's doctor stated that Downing could "ONLY work in the warehouse 2 days per week and cannot lift anything greater than 50 lbs." Ex. 19. "These will be PERMANENT restrictions." *Id.* By this point, as described above,

DFA administrators had already reviewed the essential functions of Downing's position as well as the needs of the warehouse on multiple occasions, but they discussed everything again to see if there was anything they could do for him. Valentine Dep., Ex. 16, at 42:16-43:23; 44:24-45:5.

*Termination.* DFA determined that, based on the essential job functions of the Surplus Property Agent position and the needs of the warehouse, there were no available accommodations for Downing at M&R. *Id.* at 45:6-11, 46:24-48:7, 65:21-66:2. M&R had two or three Surplus Property Agent vacancies that they were trying to fill at that time, and they simply did not have enough computer work to keep Downing busy for the three days per week (24 hours) his doctor said he had to work at a desk job. *Id.* at 45:12-23, 54:12-16; Justice Dep., Ex. 15, at 100:14-101:12. HR reviewed the vacancies in the Office of State Procurement to see if they could transfer Downing to another position, but there was no opening for which he was qualified. Valentine Dep., Ex. 16, at 44:14-20. Ultimately, M&R management, HR management, DFA's Deputy Director Tim Leathers, and Revenue Legal Counsel John Theis agreed that there were no other options besides termination. *Id.* at 46:24-48:7, 65:21-66:2. OSP Administrator Benton decided to terminate Downing because he was not ever going to be able to perform the essential functions of the Surplus Property Agent position. *Id.* at 47:3-48:25; Ex. 20. Haugen notified Downing of the decision. Haugen Dep., Ex. 17, at 15:21-16:8.

*Downing's current health status.* Downing believes that he became disabled when he had his hip surgery. Downing Dep., Ex. 14, at 101:19-23.

Downing has continued problems with his hips that will always be there.  *Id.* at 32:13-15.  But Downing can engage in his own self-care (cooking, bathing, and feeding).  *Id.* at 33:5-8.  Downing mows the grass with a self-propelled lawnmower, does weed-eating, gets down on his hands and knees to weed flowerbeds, and cleans house.  *Id.* at 28:12-25.  Downing works full-time as a shipping and receiving clerk at the University of Arkansas for Medical Sciences campus.  *Id.* at 33:9-15. Downing lifts and moves objects and delivers packages throughout the hospital every day at his job.  *Id.* at 33:16-19.  He is on his feet all day walking and delivering packages at UAMS.  *Id.* at 35:12-14.  Indeed, Downing denied having a disability on his job application with UAMS.  *Id.* at 34:8-12.  Downing can lift up to 50 pounds.  *Id.* at 34:24-35:1.

## Standard of Review

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).  The Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

But to survive a defense motion for summary judgment, the plaintiff must go beyond the pleadings and come forward with affirmative evidence raising "a genuine issue of material fact as to whether" the defendants caused the plaintiff to suffer a cognizable injury. *Zenith Radio Corp.*, 475 U.S. at 585-86; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Settle v. Ross*, 992 F.2d 162, 163-64 (8th Cir. 1993). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In other words, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Zenith Radio Corp.*, 475 U.S. at 586 (citation omitted).

## Discussion

Downing has come forward with no evidence to support his claims. The deposition testimony shows that DFA had a legitimate, non-discriminatory justification for terminating Downing. Downing could not perform essential functions of his job, and no reasonable accommodations were available. DFA was not required to create a new, unneeded position at Downing's request. And because Downing's work restrictions are permanent, his disability and FMLA-

discrimination claims must be dismissed because equitable relief is not an available remedy. Because there are no disputed issues of material fact regarding any of Downing's claims, the Court should enter summary judgment in favor of the Defendants and dismiss this case with prejudice.

## I.  DEFENDANTS DESERVE JUDGMENT AS A MATTER OF LAW ON DOWNING'S DISABILITY DISCRIMINATION CLAIMS UNDER TITLE I OF THE ADA AND THE REHAB ACT.

Downing asserts disability-discrimination claims against DFA under the Rehab Act and against Haugen and Justice in their official capacities under Title I of the ADA. *See* Order (Apr. 27, 2016), Doc. 24, at 2. Plaintiff alleges that Defendants failed to accommodate his disability and discriminated against him on the basis of his disability or, alternatively, retaliated against Plaintiff because he requested accommodation. Am. Compl., Doc. 12, ¶¶ 21-22. But, on the undisputed facts, these claims fail as a matter of law and should be dismissed.

### A. The Rehab Act

Section 504 of the Rehab Act prohibits an employer that receives federal financial assistance from discriminating against a qualified individual with a disability because of the disability. *See* 42 U.S.C. § 12101; 29 U.S.C. § 794(a). To prevail on his Rehab Act claim, Downing must prove that he: (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on his disability. *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971 (8th Cir. 1999). The Rehab Act is "similar in substance" to the ADA and "cases interpreting

either are applicable and interchangeable." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (citations omitted).

**B. The ADA**

Title I of the ADA prohibits employers from discriminating against any qualified individual with a disability on the basis of that disability.  42 U.S.C. §§ 12101, 12111.  To survive a motion for summary judgment on a discrimination claim under Title I, Downing must establish a prima facie case of discrimination by demonstrating that (1) he is disabled as defined in the ADA; (2) he is qualified to perform the essential functions of his job as a Surplus Property Agent with or without reasonable accommodation; and (3) that he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination based on disability.  *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 684 (8th Cir. 2003); *Kellogg v. Union Pac. R.R.*, 233 F.3d 1083, 1086 (8th Cir. 2000).

**C. Defendants deserve summary judgment on the Rehab Act and ADA disability-discrimination claims.**

On the undisputed facts, no rational trier of fact could find for Downing on his Rehab Act and ADA claims for disability discrimination for several independently-dispositive reasons.

1. *Downing is not disabled.*

First, on the undisputed facts, Downing does not have a disability under the ADA or Rehab Act.  A plaintiff is disabled within the meaning of the ADA if he (A) has a physical or mental impairment that substantially limits one or more of his

major life activities, (B) has a record of such an impairment, or (C) is regarded as having such an impairment.  42 U.S.C. § 12102(2).  In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  *Id.* at 198.  The holding in *Williams* applies to ADA claims concerning non-manual-task limitations.  *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1025 (8th Cir. 2003).

In this case, therefore, the Court should consider whether Downing's hip impairment "prevents or severely restricts" him from performing a major life activity.  *Wood*, 339 F.3d at 685.  In fulfilling this inquiry the Court should also consider (1) the nature and severity of Downing's impairment, (2) its duration or anticipated duration, and (3) its long-term impact.  *See* 29 C.F.R. § 1630.2(j)(2); *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir. 2001).  In the Eighth Circuit, difficulty walking long distances or climbing stairs, numbness, knee collapses, and even walking with a cane on occasion are "moderate limitations on major life activities [that] do not suffice to constitute a 'disability' under the ADA." *Wood*, 339 F.3d at 685 (quoting *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8 th Cir. 1999), *cert. denied*, 528 U.S. 1078 (2000)).

Here, as a matter of law on the undisputed facts, Downing is not disabled under the ADA or the Rehab Act.  Downing admittedly can engage in his own self-care, he can perform cleaning and maintenance around his house and yard, he

works full-time walking all over the UAMS campus delivering mail and packages, he can lift and move objects up to 50 pounds.  While Downing may still have some limitations due to his hips, as a matter of law, those limitations are not "substantial" for ADA purposes.  *See Wood*, 339 F.3d at 685-86 (finding no disability where the plaintiff had some limitations on his ability to walk, stand, turn, bend, and lift, but he could walk short distances, perform household tasks such as laundry, washing dishes, and taking out the trash, and he could lift up to 50 pounds).  Because Downing cannot establish that he is disabled under the ADA and Rehab Act, the Court should enter summary judgment in favor of the Defendants on all claims under those statutes.

Nor can Downing establish that DFA regarded him as having a substantially-limiting impairment.  DFA's decision to terminate Downing based upon the physical restrictions imposed by his doctor, when no jobs accommodating those restrictions were currently available, does not constitute disability discrimination under the ADA as a matter of law.  *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995).  Where, as here, the record reveals no material dispute of fact concerning whether the Plaintiff was a disabled person within the meaning of the ADA or the Rehab Act, summary judgment should issue.  *Id.*

   2.  *Downing was not qualified to perform essential job functions with or without reasonable accommodations.*

Downing cannot make a prima facie showing of the second element of his disability-discrimination claims, either.  On the undisputed facts, he is not qualified to perform the essential functions of his job as a Surplus Property Agent with or

without reasonable accommodation.  Undisputed witness testimony establishes that warehousing was an essential function of his job, and that there was not enough computer work to keep Downing busy for the three days a week his doctor said he had to work at a desk job.  Therefore, Downing cannot make a prima facie showing that reasonable accommodation is possible.  *See Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 950 (8th Cir. 1999).

Downing will likely claim, like the plaintiff in the *Pizza Hut* case, that DFA could have accommodated him by creating a permanent "light-duty" position in which he shared web and warehousing responsibilities with co-workers, similar to the way in which he had shared those responsibilities prior to his FMLA leave. But the Court should conclude, as a matter of law, that this suggested accommodation is unreasonable because DFA did not have 24 hours per week of desk duty to offer Downing.  The ADA does not require DFA to create a new position to accommodate a disabled employee or to shift the essential functions of the position to other employees.  *Pizza Hut*, 188 F.3d at 950 (citing 29 C.F.R. § 1630).  DFA is not obligated to hire additional employees or reassign existing workers to assist Downing in his essential job duties.  *Id.* (citing *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir. 1998)).  Nor is DFA required to create a new position that it does not need "or to create a permanent position out of a temporary one as an accommodation."  *Pizza Hut*, 188 F.3d at 950.  Because there is no genuine issue of material fact about whether a reasonable accommodation was

available, the Court should enter judgment as a matter of law in favor of the Defendants.

To the contrary, the allegations in the Amended Complaint and the exhibit thereto establish that Plaintiff was fired because he was not able to perform the essential functions of the job at issue and that no further accommodations could be provided by DFA because of the nature of Plaintiff's warehouse job.  These scant allegations fail to state a cognizable disability discrimination or retaliation claim under the ADA as a matter of law.

### 3. *No circumstances exist that give rise to an inference of unlawful discrimination based on disability.*

Downing's disability-discrimination claims also fail because Downing cannot prove that he was fired because of a disability.  There is no direct evidence of unlawful disability discrimination, and Downing has not adduced any evidence that similarly situated persons without disabilities were treated differently that would give rise to an inference of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973).  Failure of proof on causation, the third essential element of a disability-discrimination claim, is fatal.

### 4. *Conclusion*

As shown, Downing cannot establish any of the elements required to make a prima facie case of disability discrimination.  The Court should enter judgment as a matter of law in favor of the Defendants on his Rehab Act and ADA discrimination claims.

## II.   DEFENDANTS DESERVE JUDGMENT AS A MATTER OF LAW ON DOWNING'S FAILURE-TO-ACCOMMODATE CLAIM.

Downing next claims that the Defendants failed to engage in a good-faith interactive process in response to Downing's request for accommodation.  The ADA does impose an affirmative duty upon employers to reasonably accommodate a disabled individual's limitations.  *Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004).  But to prevail on a reasonable accommodation claim, Downing must prove: (1) DFA knew about his disability; (2) Downing requested accommodations or assistance for his disability; (3) DFA did not make a good-faith effort to assist him in seeking accommodations; and (4) Downing could have been reasonably accommodated but for DFA's lack of good faith.  *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014).

This claim fails for many of the same reasons as Downing's disability-discrimination claim.  First, as detailed above, Downing is not disabled under the ADA.  Second, the undisputed evidence shows that DFA and its employees made a good-faith effort to assist him when he sought accommodations. They met with him on multiple occasions (at least four times, on Downing's own testimony) and provided some short-term accommodations after he exhausted his available leave to allow him time to heal and obtain an unrestricted release to do his job.  But, for the long-term, given the nature of Downing's position and the needs of the M&R warehouse, no reasonable accommodations were available.  Downing has not and cannot show that he could have been accommodated but for DFA's lack of good faith

because there simply was not enough light-duty work available in the warehouse. As a result, his failure-to-accommodate claim falls, as well.

## III.   DEFENDANTS DESERVE JUDGMENT AS A MATTER OF LAW ON DOWNING'S RETALIATION CLAIMS UNDER TITLE I OF THE ADA.

Downing also claims that the Defendants retaliated against him for seeking accommodations for his alleged disability.  To establish a claim for retaliation under the ADA, Downing must establish (1) that he was engaged in a protected activity, such as making a request for an accommodation; (2) that he suffered adverse employment action; and (3) a causal connection between the first two elements. *Heisler v. Metropolitan Council*, 339 F.3d 622, 632 (8th Cir. 2003).  Downing cannot satisfy his burden of proof on this claim, either.  There is no evidence that DFA terminated Downing because he requested accommodation for his alleged disability. Instead, the undisputed evidence shows that Downing was terminated because he could not perform the essential functions of his job, and his restrictions were permanent.  The retaliation claim thus fails as a matter of law, and the Court should grant summary judgment to the Defendants on this claim.

## IV.   THE FMLA CLAIMS ALSO FAIL AS A MATTER OF LAW.

Downing also asserts FMLA discrimination and retaliation claims against Haugen and Justice in their official and individual capacities.  *See* Order, Doc. 24, at 2.  Downing alleges that these Defendants "forced Plaintiff to take more FMLA than was necessary," refused to reinstate him to his "former job with reasonable accommodation," and "discharged the Plaintiff in retaliation for requesting FMLA

leave and other accommodation." Am. Compl. ¶¶ 30-32. Plaintiff also alleges that Haugen and Justice, in their individual capacities, "retaliated against the Plaintiff by refusing to re-hire him in violation of . . . the FMLA." Am. Compl. ¶ 42. There is no evidence to support Downing's FMLA claims, and the Court should enter summary judgment against him and in favor of Haugen and Justice.

### A.  Plaintiff cannot make a prima facie case of an FMLA violation.

The Eighth Circuit has recognized three types of claims arising under the FMLA: (1) an "entitlement claim," which arises when an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act; (2) a "retaliation claim," which arises if an employer takes adverse action against an employee for opposing a practice made unlawful under the FMLA; or (3) a "discrimination claim," which arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA. 29 U.S.C. § 2615(a)(1)-(2); *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005-07 (8th Cir. 2012). An employee making an FMLA claim, however, "must prove that the employer was motivated by the employee's exercise of rights under the FMLA" "when it took the adverse actions." *Pulczinski*, 691 F.3d at 1006-07.

FMLA discrimination and retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011). To establish a *prima facie* case of FMLA discrimination or retaliation, an employee must show: (1) that he engaged in

activity protected under the Act; (2) that he suffered a materially adverse employment action; and (3) that a causal connection existed between the employee's action and the adverse employment action. *Pulczinski*, 691 F.3d at 1007. An employee "must prove that his exercise of FMLA rights 'played a part' in the employer's decision." *Id.* (quoting *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 n.3 (8th Cir. 2012)); *see also* 29 C.F.R. § 825.220(c) (explaining that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies").

Downing has failed to adduce any evidence that would establish that Haugen and Justice fired him because he took FMLA leave or because he opposed an act made unlawful under the FMLA. Downing agrees that he actually received all of his requested FMLA leave and that, after he exhausted his leave, he was allowed to come back to work and was given some temporary "light duty" accommodations. The evidence is also undisputed that Downing was terminated because he could not physically perform essential job functions. Because Plaintiff has not and cannot prove that he was terminated for exercising rights under the FMLA, the Court should enter summary judgment in favor of Haugen and Justice, both in their official and individual capacities, on the FMLA claims.

### B.   Haugen and Justice have qualified immunity from suit in their individual capacities under the FMLA.

The FMLA claims against Haugen and Justice in their individual capacities also fail under the doctrine of qualified immunity. "Under the doctrine of qualified

21

immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Ark. Dept. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "A court considers whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Hager*, 735 F.3d at 1013.

Here, as discussed above, Downing has not and cannot prove his FMLA claims.  Nor is there any indication that the alleged right to be reinstated to a former position despite one's admitted lack of physical ability to perform essential job functions and when no reasonable accommodation  was available was clearly established at the time of the alleged infraction.  For both of these reasons, the Court should find that Haugen and Justice have qualified immunity from the FMLA claims asserted against them in their individual capacity.

## Conclusion

For all of the foregoing reasons, the Court should enter summary judgment in favor of the Defendants and dismiss the Amended Complaint with prejudice.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

By:     */s/ Jennifer L. Merritt*
        Jennifer L. Merritt
        Ark Bar No. 2002148
        Assistant Attorney General
        Arkansas Attorney General's Office
        323 Center Street, Suite 200
        Little Rock, AR 72201
        Telephone: (501) 682-1319
        Fax: (501) 682-2591
        jennifer.merritt@arkansasag.gov

        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Jennifer L. Merritt, hereby certify that on December 30, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Luther Oneal Sutter
luthersutter.law@gmail.com

                        */s/ Jennifer L. Merritt*
                        Jennifer L. Merritt