IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WILLIAM R. DOWNING, JR.                                            PLAINTIFF

v.                          No. 4:15-cv-570-DPM

DEPARTMENT OF FINANCE AND
ADMINISTRATION, an Agency of the
State of Arkansas; BOB HAUGEN and
DAVID JUSTICE, Both in their
Individual and Official Capacities                                DEFENDANTS

ORDER

1. Arkansas has a sideline in surplus personal property—office furniture, vehicles, computers, cameras, and all kinds of things used in state government. Rick Downing worked for the Department of Finance and Administration handling, redistributing, and selling this property. At first his position involved stocking the warehouse, inspecting property, and sometimes driving across the state in delivery trucks. His responsibilities changed, though, when he took on internet-based sales while filling in for a retiring co-worker. This work took some time away from his warehouse-specific duties. He did well and got positive reviews. Internet-based sales later became Downing's primary weekly duty.

Downing began having hip problems around the time he started working for the Department. Early on, he alerted his manager that eventually one or both of his hips would need replacing. From 2011 to 2014, his hip problems worsened. Downing's internet-based duties, which he says totaled about 60% of his weekly time before leave, were undoubtedly easier on his hips than when the Department had him working mostly (or entirely) in the warehouse. Even with his primarily web-based work schedule, a double hip replacement became necessary, and Downing requested, and was granted, twelve weeks of FMLA leave.

While Downing was on leave, the Department trained another surplus property agent, one Kelly, to fill in. Kelly went about the same tasks differently, spending less time at the desk than Downing did. The Department thought this was more efficient, and was pleased with Kelly's work. So, when Downing came back from leave, the Department told him he would be working on the new schedule—Downing would rotate with Kelly, on a week-on, week-off basis between the warehouse and web duties. The new schedule also ensured that two people were trained on the internet part of the job, in the event one wasn't available. After Downing said his hips

wouldn't allow him to work the new schedule, the Department asked him to get a doctor's release clarifying his limitations and approving the new schedule. He couldn't. His doctor said the best Downing could do was work in the warehouse two days a week, not the four or five days in a row required by the new schedule. The doctor also said Downing couldn't lift more than fifty pounds. These were permanent restrictions. The Department, wanting to keep the new, supposedly more efficient schedule, told Downing he couldn't perform the essential functions of his job with his restrictions, and fired him.

Downing has sued, claiming the Department violated the Americans with Disabilities Act, the Rehabilitation Act, and the Family and Medical Leave Act. (Early in the case, the Court dismissed Downing's Arkansas Civil Rights Act claim without prejudice. № 24.) The ADA and Rehab Act claims are analyzed the same way; cases about each statute are instructive on the other one. *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). Citing these two laws, Downing says the Department discriminated against him because of his disability, failed to reasonably accommodate his disability, and retaliated against him for seeking an accommodation. Citing the FMLA, he

claims that the Department retaliated and discriminated against him for taking protected leave. Downing seeks partial summary judgment on three particular issues; and the Department says, in a motion for summary judgment and a supplemental motion, that it should, for various reasons, win the whole case as a matter of law. The best way to untangle things is to analyze the parties' disputes by issues: Downing's runs at judgment first; then FMLA issues; next, some threshold points about the Rehab Act and the ADA; and, finally, the deeper Rehab/ADA issues. Long story short: the core of this case needs a trial.

**2.** Downing isn't entitled to judgment as a matter of law on any issue. First, he didn't face a blanket exclusion under the ADA. The Department made an individual inquiry into his hip problems and resulting work restrictions. *School Board of Nassau County, Florida v. Arline*, 480 U.S. 273, 287–89 (1987). The Department doesn't have a policy requiring full doctor releases. Taking the facts in the light most favorable to the Department, it met with Downing four times to discuss his abilities and limitations. № 37 at ¶¶ 23, 27, 29, 40, 41. The decision to let him go, based on these partly disputed conversations, was an individualized one. Second, Downing isn't entitled to

summary judgment on his claim for failure to reinstate under the FMLA. The record is unsettled; and a jury needs to decide what the specifics and essential duties of his job were — both before and after his leave. While the Department says it intended him to return to the same job, with the same pay, same title, and same minimum requirements, Downing says that, on the Kelly schedule, his job was different. 29 U.S.C. § 2614(a)(1)(A) & (B). Third, no change in job duties — real or perceived — was made to interfere with, or because of, Downing's FMLA leave rights. 29 U.S.C. § 2615. There's no question that the Department granted his leave willingly; and nothing of record shows that anyone tried to persuade him not to take his leave. *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1007 (8th Cir. 2012).

**3.** Two of Downing's three FMLA claims fail as a matter of law. First, the Department didn't interfere with Downing's FMLA rights. Downing requested leave, got it, and then came back to work. He wasn't discouraged from taking leave or denied any entitlements. *Ibid.* Second, the Department didn't retaliate against him for taking his protected leave. His absence provided an occasion: it created circumstances wherein the Department could try something new. It did. Downing's firing was, of course, an adverse

employment action; but there's no evidence that he was fired because he took leave. *Wierman v. Casey's General Stores*, 638 F.3d 984, 999–1000 (8th Cir. 2011). The causation facts point only in one direction: his post-return restrictions and the new schedule.

Downing's failure-to-reinstate claim, though, is for the jury. There are material disputed facts. It's clear that Downing's title and pay were the same when he returned from leave. And he had to work in the warehouse some and had some web duties. The skills necessary for each slice didn't change. But it's also clear that Downing's schedule was different when he came back. The record goes both ways about whether Downing, working the modified schedule, was restored to an equivalent position under 29 U.S.C. § 2614(a), or to a different position where "the job duties and essential functions of the newly assigned position [were] materially different from [Downing's] pre-leave position." *Cooper v. Olin Corporation, Winchester Division*, 246 F.3d 1083, 1091 (8th Cir. 2001). The post-leave position didn't have to be identical, only substantially similar in skill, effort, responsibility, and authority. 29 C.F.R. § 825.215; *Cooper*, 246 F.3d at 1091–92. Deciding the material facts here is the sole FMLA issue for trial. If the jury concludes that the positions were

equivalent, then the Department isn't liable under the FMLA for firing Downing if it decided he couldn't do the job's essential functions. *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 851 (8th Cir. 2002). The regulations acknowledge that these circumstances may raise an ADA issue, but not an FMLA issue. 29 C.F.R. § 825.216(c).

The individual-capacity FMLA claims against Justice and Haugen drop out in any event. If the position was equivalent, then no FMLA violation occurred, so the individual claims fail. But, if Downing wasn't reinstated to a substantially similar position, then Justice and Haugen are entitled to qualified immunity. The FMLA reinstatement law is not so clearly established that a reasonable manager in Justice and Haugen's place would have known he was violating that law. *Mahers v. Harper*, 12 F.3d 783, 785–86 (8th Cir. 1993); *Sexton v. Martin*, 210 F.3d 905, 909–10 (8th Cir. 2000). The merits are close: The need for a trial to resolve whether there were material differences in the pre-leave and post-leave positions shows the reasonableness of Justice and Haugen's belief that each was acting within the law.

**4.** The Department* is partly right and partly wrong in its supplemental push for judgment as a matter of law. Downing's objections to the Court reaching the merits of these belated points are overruled. The extended briefing allowed, and the trial continuance, eliminate any prejudice in the arguments' tardiness. And these are threshold law issues about the Rehab Act and the ADA that could be raised at trial. Better to take them up now.

Exhaustion first. Defendants concede, № 75 at 3 n.2, that the Rehab Act doesn't require exhaustion. *Miener v. Missouri*, 673 F.2d 969, 978 (8th Cir. 1982). The ADA does. *Randolph v. Rodgers*, 253 F.3d 342, 347 n.8 (8th Cir. 2001). It's undisputed that Downing didn't exhaust his ADA retaliation claim with the EEOC. № 64–1. So the Department prevails on that point as a matter of law.

Next, the Department's new no-sole-cause attack on all Downing's Rehab Act claims. This attack fails, though without prejudice to what the proof shows at trial. All but one of the FMLA claims has passed out of the case in the Defendants' favor. The law allows any plaintiff to pursue

---

*Downing's ADA/Rehab Act claims are pleaded against Haugen and Justice only in their official capacities. They and the Department are one in the Court's analysis.

alternative claims. And the Court declines to hold that Downing's two unsuccessful FMLA claims undermine his Rehab Act claims as a matter of law. Downing is right, moreover, when he responds that his alleged disability may or may not have been the sole cause of any Department action. The conclusion will depend on the proof at trial.

**5.** The Department isn't entitled to judgment as a matter of law on Downing's Rehab/ADA claims. The Court discusses these overlapping claims together. Material disputed facts exist on discrimination, accommodation, and retaliation.

The threshold issue on the first two claims is actual disability. The proof here leans hard in Downing's direction. As he points out, the Department's authority is outdated because Congress amended the ADA in 2008, loosening the legal standard. *Summers v. Altarum Institute, Corp.*, 740 F.3d 325, 329 (4th Cir. 2014) discusses the statutory and regulatory changes made after *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). At a minimum, Downing's hip-related permanent restrictions, especially in lifting, create a fact issue on disability.

The deep issue on discrimination is whether Downing could do the essential functions of his job after his hip replacements. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 950–51 (8th Cir. 1999). But the record is mixed on exactly what his job was. *Compare* № 53-1 *at* 2 *with* № 53-2 *at* 11–12. The parties reasonably dispute the job's essential functions—in particular, the lifting requirement. № 35-9, 35-18, 54 *at* 9–10 & 55 *at* 28. Last, and this edges into his next claim, the material facts are disputed on whether (with or without accommodation) Downing could perform those essential functions. *Compare Faidley v. United Parcel Service of America, Inc.*, 2017 WL 1228565 at *2 (8th Cir. 4 April 2017), *with Kallail v. Alliant Energy Corporate Services, Inc.*, 691 F.3d 925, 930–33 (8th Cir. 2012).

On accommodation, the record is likewise mixed on whether Downing was actually disabled, whether the Department was aware of a disability, and whether he sought an appropriate accommodation. The parties vigorously dispute the Department's good faith in trying (or not) to work things out. № 54 *at* 14; № 56 *at* ¶ 24. Was something less than the Kelly schedule possible without sacrificing efficiency? This, too, is for the jury.

On retaliation, finally, there are echoing factual disputes and one new one. If Downing can convince the jury that he sought accommodation (regardless of any disability), then he must also prove that his post-request firing was *because* he sought that accommodation. *Heisler v. Metropolitan Council*, 339 F.3d 622, 632 (8th Cir. 2003). Reasonable minds could reach different conclusions on the record presented so far. We'll see what the jury concludes really happened.

**6.** The Department's motion *in limine* is granted in part and denied in part. The posting for Downing's current warehouse job at UAMS, № 53-1, is excluded. It's not relevant to his claims here. But we'll have to take the internal audit documents, № 53-7, piece by piece. Belated disclosure by Downing doesn't resolve admissibility. These are Department documents. Haugen and Justice were involved in the audit, so they knew that it was a source for relevant evidence. After Downing's deposition, Department counsel was also on notice about this source of information. We're not going to try the internal audit. But the fact that it was done, and the decision reached, are admissible. And Department statements (*e.g.*, the Leathers

letter), and statements by Haugen and Justice, during the audit are admissible. FED. R. EVID. 801(d)(2).

* * *

Downing's motion for summary judgment, № 39, is denied. Defendants' first motion for summary judgment, № 35, is granted in part and denied in part. Defendants' supplemental motion for summary judgment, № 64, is granted in part and denied in part.

Here are the claims for trial:

- FMLA failure to reinstate;
- ADA/Rehab Act discrimination;
- ADA/Rehab Act accommodation; and
- Rehab Act retaliation.

The Department's motion in limine, № 58, is granted in part and denied in part. An Amended Final Scheduling Order with a first-out trial setting will issue.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

20 April 2017

-12-