## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**WILLIAM R. DOWNING, JR.**                                    **PLAINTIFF**

v.                                    **No. 4:15-cv-570-DPM**

**DEPARTMENT OF FINANCE AND
ADMINISTRATION, an Agency of the
State of Arkansas;  BOB HAUGEN and
DAVID JUSTICE, Both in their
Individual and Official Capacities**                **DEFENDANTS**

### ORDER

**1.    Schedule.**  We'll start trial as planned on Monday, 2 April 2018 in Courtroom 1A of the Richard Sheppard Arnold United States Courthouse.  The Court will hold another pretrial at 10:00 Monday morning to discuss the final exhibits and law issues, as needed.  The voir dire will begin at 1:00 p.m.  We'll pick our jury, do the preliminary instructions, and open Monday afternoon.  The proof will start at 8:30 a.m. Tuesday and each morning thereafter.  Counsel should arrive by 8:15 each morning.

**2.    Pending motions.**  For the reasons stated on the record at yesterday's pretrial hearing, the motion to reconsider, № 91, is denied with caveats.  And the motion to quash Haugen's subpoena, № 99, is granted in part and denied in part.

3.     **Jury instructions.**  The Court is attaching its working drafts of (1) the voir dire, (2) the preliminary instructions, (3) the final instructions, (4) the questions/verdict, and (5) the Rehab Act damages instruction and question.  After further thought, the Court agrees with the parties that the second part of draft Question 1 — about the business-judgment rule — shouldn't go to the jury.  Instead, this issue will be tried to the Court.  Liability and damages will be bifurcated, as discussed yesterday.

4.     **Damages.**  The Court is inclined to agree with Downing that emotional distress damages are available, but the Court is continuing its research and thinking on this point.  These drafts include that line item.  If the law is unclear, submission seems the route most likely to avoid a retrial after any appeal.  The Court will hear further argument if we get there.

5.     **Witnesses and Exhibits.**  The Court appreciates the parties' electronic and paper copies of the potential witnesses and exhibits.  Please continue collaborating on the audit documents.  And please alert the Court as soon as possible with updated electronic copies of Downing's exhibits if there is an agreement on more redactions.  During trial, by the close of business each day counsel should let each other know who they'll be calling the following day.

6.     **Voir Dire.**  The Court will conduct most of the voir dire, with follow-up by each side — ten to fifteen minutes at most.  Please

focus your questioning. Voir dire is not a time to explain the law or the burden of proof, to explain what the case is about, to seek commitments, or to pump the potential jurors full of fairness. Instead, please ask lean questions about potential jurors' experiences and views to ferret out bias. If the parties would prefer to have the Court ask certain questions, please submit them to chambers for consideration by close of business on Friday, 30 March 2018.

**7.** **Openings and Closings.** Twenty minutes a side for opening Monday afternoon. Five-minute mini-openings a side every morning thereafter. Thirty minutes a side for closing. Downing may reserve some rebuttal.

**8.** **Objections.** Please avoid speaking objections in front of the jury. A word or two will do. If the Court needs to hear more, we'll have a bench conference.

So Ordered.

*DPMarshall Jr.*

D.P. Marshall Jr.

United States District Judge

29 March 2018

# (1) VOIR DIRE

**A.** Preliminaries

- Thank you for serving. Echo "Called to Serve."

- A morning of speaking the truth, *voir dire* = twelve people good and true.

- Two to three days—school day.

- Urgent or extraordinary obligations this week?

- Rules of the Road:

  - Can I be completely fair and impartial?

  - Can I decide the case based solely on the evidence seen and heard in this courtroom, the law as explained by the Court, and my common sense?

  - Questions and Answers. You = you and your immediate family.

  - Raise your hand, state your name, and answer.

- Can answer at the bench if uncomfortable answering a particular question in front of others.

- Eighteen, but all—Notepads.

- Questionnaires. Summary.   Confirm lawyers have.

- Case Sketch—Not evidence, just background

  i. This is a civil case.  The Plaintiff, William Downing, is suing his former employer, the Department    of    Finance    and Administration, and two of his managers there, Bob Haugen and David Justice.  After a few years working at the Department, Downing needed hip-replacement surgery. He went on twelve weeks of FMLA leave.

When he returned, he had some permanent hip-related restrictions from his doctor. Downing says the Department and his managers changed his job, failed to accommodate his physical limitations, and ultimately fired him because of his leave and his limitations. The Department, Haugen, and Justice say they didn't change the job, tried to accommodate Downing's limitations, and fired him only because he couldn't do key parts of the job. The jury will decide what the facts truly are.

- Introductions
  - Plaintiff William R. Downing Jr.

    Lawyers = Luther Sutter and Luc Gillham

- Defendants Department of Finance and Administration, Bob Haugen, and David Justice Lawyers = Jennifer Merritt and Christine Cryer

- **Haugen excused because of illness.**

- Witnesses [Read Lists]

- Know the parties? Lawyers? Witnesses?

**B.** Call **Eighteen**, But All—Notepads

**C.** General Background Questions

- Know other panel members? Know lawyers or Court staff? Know witnesses?

- Legal training or experience? Deal with the law regularly through work?

- Prior jury service?

- Prior court experience? Sued or been sued? Witness?

- Religious convictions against sitting in judgment?

- 5 -

- Negative feelings about civil justice system?

    - Too many lawsuits?

    - If sue, then win?

**D.** Case-Specific Questions

**Remember, answer about you and your immediate family; approach to answer sensitive questions**

- Employed in personnel or human resources? Involved at work in approving or disapproving leave by other employees?

- Anyone ever employed by a state agency? A state-funded program?

- Anyone work regularly with folks from the Department of Finance and Administration?

- Anyone ever taken FMLA leave from work?

- Anyone ever had a physical disability?

- 6 -

- Anyone ever sought a workplace accommodation for a physical disability?

- Any prior experience with the Department of Finance and Administration?

- Any strong opinions about the Department of Finance and Administration and the work it does?

- Anyone ever bought surplus property from the Department of Finance and Administration?

**E.** Juror Question Time

**F.** The Unasked Question?

**G.** Lawyers' Follow-Up Questions?  Fed. R. Civ. P. 47(a).

**H.** Strikes for Cause.  Fed. R. Civ. P. 47(c).[*]

---

[*] **Rule 47. Selecting Jurors**
(a) EXAMINING JURORS. The court may permit the parties or their attorneys to examine prospective jurors or may itself do so. If the court examines the jurors, it must permit the parties or their attorneys to make any further inquiry it

- 7 -

**I.**    Peremptory Challenges.  Fed. R. Civ. P. 47(b).**

---

considers proper, or must itself ask any of their additional questions it considers proper.

(b) PEREMPTORY CHALLENGES. The court must allow the number of peremptory challenges provided by 28 U.S.C. § 1870.

(c) EXCUSING A JUROR. During trial or deliberation, the court may excuse a juror for good cause.

*Allen v. Brown Clinic,* **531 F.3d 568, 572 (8th Cir. 2008).**
"To challenge a juror for cause, a party must show actual partiality growing out of the nature and circumstances of the case. A district court is required to strike for cause any juror who is shown to lack impartiality or the appearance of impartiality, and, absent abuse of discretion, we will not interfere with the district court's determination of juror qualifications. The district court is given broad discretion in determining whether to strike jurors for cause because it is in the best position to assess the demeanor and credibility of the prospective jurors."

** **28 U.S.C. § 1870**
"In civil cases, each party shall be entitled to three peremptory challenges. Several defendants or several plaintiffs may be considered as a single party for the purposes of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly.

- 8 -

- Three each side.

- Challenging Strikes. Race or Gender? *Batson.*\*\*\*

**J.**   Seat and Swear Jury.

"You and each of you do solemnly swear or affirm to well and truly try the matter now on trial and render a true verdict according to the law and the evidence, so help you God."

---

All challenges for cause or favor, whether to the array or panel or to individual jurors, shall be determined by the Court."

\*\*\* **Three-part test**.

"In order to succeed on a *Batson* challenge, a party must satisfy a three-part test. First, an objecting party must make a *prima facie* showing that a peremptory challenge was made on the basis of race. Second, if a *prima facie* showing has been made, the party striking the juror must offer a race-neutral basis for striking the juror in question. Third, the trial court must determine whether the objecting party has proven the ultimate question of purposeful discrimination. . . . We . . . strongly urge the district courts to make on-the-record rulings articulating the reasoning underlying a determination on a *Batson* objection." *Cook v. City of Bella Villa*, 582 F.3d 840, 854 (8th Cir. 2009).

**K.** Thanks and Goodbye *venire*.

# (2) DRAFT PRELIMINARY INSTRUCTIONS

## PRELIMINARY INSTRUCTION NO. 1

Ladies and gentlemen, I will take a few moments now to give you some initial instructions about this case and about your duties as jurors. At the end of the trial I will give you further instructions. I may also give you instructions during the trial. Unless I specifically tell you otherwise, all these instructions — both those I give you now and those I give you later — are equally binding on you and must be followed.

I am the judge of the law and you are the judges of the facts. As judges of the facts, it's your duty to determine the truth from the evidence and the reasonable inferences arising from the evidence. In making your factual decisions, you must not engage in guess work or speculation.

This is a civil case. As I said, William Downing has sued his former employer, the Arkansas Department of Finance and Administration, and two of his former managers there, Bob

Haugen and David Justice. The Department of Finance and Administration is a state agency that handles, among many other things, the redistribution and sale of surplus property used in state government. The surplus property includes things like office furniture, vehicles, computers, and furnishings. Mr. Downing worked for the Department handling this surplus property. He worked in the warehouse, did some computer tasks, and made online sale.

Downing has hip problems. He asked for, and received, twelve weeks of FMLA leave because he needed hip-replacement surgery. About a month after he returned to work, Downing's doctor concluded that Downing couldn't work more than two days a week in the warehouse or lift anything heavier than fifty pounds. The Department decided that Downing could no longer perform the essential functions of his job. Downing was fired.

Downing alleges that the Department, Haugen, and Justice violated the Family Medical Leave Act, the Americans with Disabilities Act, and the Rehabilitation Act. He says they unlawfully changed his job while he was on leave, didn't accommodate his physical limitations, and then fired him for discriminatory reasons. The Department, Haugen, and Justice say they didn't change the job, tried to accommodate Downing's limitations, and fired him only because he couldn't do key parts of the job.

Haugen is ill. I've excused him from attending the whole trial. If he is well enough later in the week, he'll testify. We'll see. I'll keep you posted. Don't hold it against Haugen, Justice, or the Department that Haugen isn't here. And don't lean in Haugen's favor out of concern for his health.

From all the evidence, you will decide what the facts are and answer the liability questions I'll list for you in a moment. Your

- 4 -

answers to these questions will be your verdict in this case. You are entitled to consider all the evidence in the light of your own observations and experiences in the affairs of life. You may use reason and common sense to draw conclusions from facts that have been established by the evidence. Depending on your answers to the liability questions, the Court may ask you some questions about damages.

Do not allow any sympathy or any prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# PRELIMINARY INSTRUCTION NO. 2

I have mentioned the word "evidence." "Evidence" includes the testimony of witnesses, documents, and other things received as exhibits, any facts that have been stipulated—that is, formally agreed to by the parties—and any facts that have been judicially noticed—that is, facts which I say you may, but are not required to, accept as true, even without evidence.

Certain things are not evidence:

1.      Statements, arguments, questions, and comments by lawyers representing the parties in the case are not evidence.

2.      Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If I sustain an objection to a question, you must ignore the question and must not try to guess what the answer might have been.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

3. Testimony that I strike from the record, or tell you to disregard, is not evidence and must not be considered.

4. Anything you see or hear about this case outside the courtroom is not evidence, unless I specifically tell you otherwise during the trial.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I will tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." You should not be concerned with those terms. The law makes no distinction between direct and circumstantial evidence. You should give all evidence the weight and value you believe it is entitled to receive.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# PRELIMINARY INSTRUCTION NO. 3

In deciding what the facts are, you will have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony of any witness to believe, you should consider several things: the witness's intelligence; the opportunity the witness had to have seen or heard the things testified about; the witness's memory; any motives that witness may have for testifying a certain way; the manner of the witness while testifying; whether that witness said something different at an earlier time; the general reasonableness of the testimony; and the extent to which the testimony is consistent with other evidence that you believe.

A caution about considering a witness's demeanor while testifying. Many folks are nervous just being in court. And there

are bold liars and shy truth-tellers. Use your common sense and be discerning when judging someone's credibility based on their demeanor on the stand.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things. You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood. That may depend on whether it has to do with an important fact or only a small detail.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

## PRELIMINARY INSTRUCTION NO. 4

At the end of the trial you must make your decisions based on what you recall of the evidence. You will not have a written transcript to consult, and it may not be practical for the court reporter to read back lengthy testimony. You must pay close attention to the testimony as it is given.

If you wish, however, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to answer the interrogatories. And do not let note taking distract you so that you do not hear other answers by the witness.

When you leave at night, your notes will be secured and not read by anyone.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

## PRELIMINARY INSTRUCTION NO. 5

During the trial it will be necessary for me to talk with the lawyers out of the hearing of the jury, either by having a bench conference while the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# PRELIMINARY INSTRUCTION NO. 6

Finally, to ensure fairness, you as jurors must obey the following rules:

*First*, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended and your verdict has been accepted by me. If someone should try to talk to you about the case during the trial, please report it to the bailiff immediately.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

*Fourth*, during the trial you should not talk with or speak to any of the parties, lawyers, or witnesses involved in this case—you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side—even if it is simply to pass the time of day—an unwarranted and unnecessary suspicion about your fairness might arise. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator or the like, it is because they are not supposed to talk or visit with you.

*Fifth*, it will be necessary for you to tell your family, friends, teachers, coworkers, or employer about your participation in this trial so that you can let them know you are required to be in court. You should warn them not to ask you about this case, not to tell you anything they know or think they know about this case, and

Court's Draft Preliminary Instructions          4:15-cv-570-DPM
29 March 2018                          *William Downing v. DFA et al.*

not to discuss this case in your presence. You must not communicate with anyone about the parties, witnesses, participants, claims, evidence, or anything else related to this case, or tell anyone anything about the jury's deliberations in this case until after I accept your verdict or until I give you specific permission to do so.

During the trial, while you are in the courthouse, and after you leave for the day, do not provide any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell phone, a smart phone, iPad, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, Instagram, YouTube, or Twitter, to communicate to anyone any information about this case until I accept your verdict.

*Sixth*, do not do any Internet research—using Google, for example.  Do not do any research by using libraries, reading the newspapers, or in any other way making any investigation about this case on your own.  Do not visit or view any place discussed in this case and do not use Internet maps or Google Earth or any other program or device to search for or to view any place discussed in the testimony. Also do not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or me.  Don't, for example, look at the Department's website about surplus property for sale.

**Ask each juror:  Juror No.  —, on your oath, do you promise not to post anything about your jury service on any social media website such as Facebook, Twitter, Instagram, or the like during the trial?  On your oath, do you promise not to use the Internet to look up anything about the case, the matters discussed, the**

Court's Draft Preliminary Instructions                    4:15-cv-570-DPM
29 March 2018                                *William Downing v. DFA et al.*

lawyers, Downing, the Department, Haugen, Justice, me, or the law?

*Seventh,* do not read any news stories or articles in print, on the Internet, or in any blog, about the case or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it. In fact, until the trial is over I suggest that you avoid reading any newspapers or news journals at all, and avoid listening to any TV or radio newscasts at all. I do not know whether there might be any news reports of this case, but if there are, you might inadvertently find yourself reading or listening to something before you could do anything about it. I can assure you, however, that by the time you have heard the evidence in this case, you will know more about the matter than anyone will learn through the news media.

Finally, I want to reiterate that, **before** the trial is over, you are bound by your oaths not to discuss the evidence with anyone —

not even with a member of your family. And I think you can understand the fairness and reasonableness of that rule. When we start discussing the evidence and explaining the proof, there is a tendency to start making up our minds. And you jurors are bound by your oaths to keep an open mind on all of the material issues in the case until you have heard, seen, or otherwise experienced **all** of the evidence, not just **some** of it; until you have received the Court's final instructions as to the law; and until you have had the benefit of the lawyers' closing arguments.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# PRELIMINARY INSTRUCTION NO. 7

When the lawyers have finished questioning each witness, you may propose questions to clarify the testimony. In your questions, follow these rules:

- Don't express any opinion about the testimony;

- Don't argue with a witness; and

- Don't sign your name or juror number.

Submit your questions in writing by passing them to the Court Security Officer. I will review each one with the lawyers. If the question is proper, the lawyers or I will ask it.

Don't put any special weight on a question just because a juror suggested it. Don't put any special weight on the question because I may be the one asking it. And consider the witness's answer just like any other piece of evidence.

You may not get your question answered. For example, I may decide that the question is not proper under the rules of evidence.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

And even if the question is proper, you may not get an immediate answer. For example, a later witness or a coming exhibit may provide the answer.

Don't feel slighted or disappointed if your question isn't asked or answered immediately. Remember, you are not advocates for either side; you are impartial judges of the facts.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# PRELIMINARY INSTRUCTION NO. 8

The trial will proceed in the following manner:

First, Downing's lawyer will make an opening statement. Next, the lawyer for the Department, Haugen, and Justice will make an opening statement. An opening statement is not evidence, but simply a summary of what the lawyer expects the evidence to be.

Downing's lawyer will then present evidence by calling witnesses, and the lawyer for the Department, Haugen, and Justice may cross-examine those witnesses. Following Downing's case, the lawyer for the Department, Haugen, and Justice will present evidence by calling witnesses, and Downing's lawyer may cross-examine those witnesses.

Finally, Downing's lawyer may offer rebuttal evidence.

After presentation of evidence is completed, the lawyers will make their closing arguments to summarize and interpret the

evidence for you.  As with opening statements, closing arguments are not evidence.

After the closing arguments, the Court will give you some final instructions.  Then you'll go to the jury room to deliberate on your verdict.

# PRELIMINARY INSTRUCTION NO. 9

You need to know a few terms of law to answer some of the fact questions in this case. Here are definitions of those legal terms. You don't have to write down these definitions or the questions. My staff will hand them out now. Please follow along as I read them.

- *Essential job functions* are the fundamental duties of Downing's job. Marginal functions are not essential functions of the job.

- *Equivalent* means virtually identical in terms of pay, benefits, and working conditions, including privileges, perquisites, and status. It must involve the same or substantially similar duties, skill, effort, responsibility, and authority.

- An *actual disability* is a physical or mental impairment that substantially limits one or more major life activities.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

- *Substantially limits* is a broad term. An impairment can be substantially limiting even though it doesn't prevent Downing from performing a major life activity. Impairments or effects of impairments that last (or are expected to last) less than six months may be substantially limiting. In deciding whether an impairment substantially limits a major life activity, you should compare Downing's ability to perform the major life activity with an average person's ability.

- *Major life activities* include (but aren't limited to) performing manual tasks, walking, standing, lifting, bending, and working.

- Downing was *regarded as having a disability* if he had an actual or perceived physical impairment, regardless of whether the impairment limits or is perceived to limit a major life activity.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

- Downing cannot be regarded as having a disability if his impairment was transitory and minor.

- A transitory impairment is one with an actual or expected duration of six months or less. (This is unlike an actual disability, which doesn't have a time limit.)

• Downing's disability (whether actual or perceived) was a *motivating factor* if that disability played a part in the Department's decision to fire Downing.

• An *accommodation* is a modification to the work place that allows a person with a disability to perform the essential functions of the job or allows the person to enjoy the same benefits and privileges as an employee without a disability.

• A *reasonable accommodation* is one that could reasonably be made under the circumstances and may include (but is not limited to): job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or

- 24 -

modifications of equipment or devices; and other similar accommodations. Reasonable accommodation does not include creating a new position or bumping another employee in order to reassign a disabled employee. Reasonable accommodation also does not necessarily mean the accommodation requested or preferred by Downing.

- *Undue hardship* means significant difficulty or expense to the Department. Some things to consider are:

  - The nature and cost of the accommodation;

  - The number, type, and location of the Department's various facilities;

  - The financial resources of the Department's facility that would be involved in providing the accommodation; the number of employees at that facility; and the overall impact of the accommodation on that facility;

  - The financial resources and size of the Department itself;

- The type of work the Department performs, including the structure and functions of the Department's workforce.

Now, here are the questions that the jury will probably have to answer. The questions might change a little, depending on the evidence. But if that happens, I'll tell you.

## QUESTIONS

1.  Were Downing's pre-leave and post-leave jobs equivalent?
    Yes _____     No _____.

2.  When Downing returned from leave, was he able to perform the essential functions of his pre-leave job?
    Yes _____     No _____

3.  Did Downing have an actual disability?
    Yes _____     No _____

    If you answered "yes," did the Department know about Downing's disability?
    Yes _____     No _____

4.  Whether Downing was actually disabled or not, did Bob Haugen or David Justice regard Downing as having a disability?
    Yes _____     No _____

5.  At the time Downing was fired, did his hip-related restrictions prevent him from being able to perform any essential job functions?
    Yes _____     No _____

6.  Was Downing fired solely because of an actual or perceived disability?
    Yes _____     No _____

**If you answered "yes" to Question 6, skip Question 7.**

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

7. Was Downing's actual or perceived disability a motivating factor in the Department's decision to fire Downing?

             Yes \_\_\_\_        No \_\_\_\_

If you answered "yes," would the Department have fired Downing even if it had not considered his disability?

             Yes \_\_\_\_        No \_\_\_\_

**Answer the remaining Questions only if you found (see Question 3) that Downing was actually disabled and that the Department knew it.**

8. After returning from leave, did Downing seek an accommodation for any disability?

             Yes \_\_\_\_        No \_\_\_\_

9. At the time Downing was fired, could he have performed the essential functions of his job with a reasonable accommodation?

             Yes \_\_\_\_        No \_\_\_\_

If you answered "yes," would providing the accommodation have created an undue hardship on the Department?

             Yes \_\_\_\_        No \_\_\_\_

10. If you conclude that Downing requested an accommodation (see Question 8), was he fired solely because he sought that accommodation?

             Yes \_\_\_\_    No \_\_\_\_    Inapplicable \_\_\_\_

Court's Draft Preliminary Instructions              4:15-cv-570-DPM
29 March 2018              *William Downing v. DFA et al.*

## PRELIMINARY INSTRUCTION NO. 10

The burden of proving a fact is placed upon the party whose claim or defense depends upon that fact. The party who has the burden of proving a fact must prove it by a preponderance of the evidence. To prove something by a "preponderance of the evidence" is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more believable.

If, on any issue of fact in the case, the evidence is equally balanced, you cannot find that fact has been proved. The preponderance of the evidence is not necessarily established by the greater number of witnesses or exhibits a party has presented.

You've probably heard of the term "proof beyond a reasonable doubt." This is a stricter standard, which applies in criminal cases. It does not apply in civil cases like this one. You should, therefore, put it out of your minds.

- 29 -

Downing has the burden of proof, by a preponderance of the evidence, on these disputed factual issues:

- The Department, Haugen, and Justice refused to reinstate him to the same or a substantially similar job after he returned from leave.

- He had an actual or perceived disability that the Department, Haugen, and Justice knew about.

- He could perform the essential functions of his job both at the time he returned from FMLA leave and at the time he was fired, with or without a reasonable accommodation.

- He was fired solely because of an actual or perceived disability, or his actual or perceived disability was a motivating factor in the Department's decision to fire him.

- After returning from leave, he requested and was denied a reasonable accommodation.

- He was fired solely because he sought a reasonable accommodation.

The Department, Haugen, and Justice have the burden of proof, by a preponderance of the evidence, on these disputed factual issues:

- Downing would have been fired even if the Department, Haugen, and Justice had not considered his disability in its decision to fire him.

- Accommodating Downing would have imposed an undue hardship on the Department.

Court's Draft Preliminary Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# (3) DRAFT FINAL INSTRUCTIONS

# FINAL INSTRUCTION NO. 1

Members of the Jury, the instructions I gave you at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. You must not single out some instructions and ignore others because all are important. This is true even though some of those I gave you at the beginning of the trial are not repeated here.

The instructions I am about to give you now are in writing and will be available to you in the jury room. I emphasize, however, that this does not mean they are more important than my earlier instructions. Again, all instructions, whenever given and whether in writing or not, must be followed.

- 2 -

Nothing I say in the instructions is to be taken as an indication that I have any opinion about the facts of the case, or what that opinion is. It is not my function to determine the facts. You will determine the facts. During this trial I have occasionally asked questions of witnesses. Do not assume that because I asked questions that I hold any opinion on the matters to which my questions related.

Justice through trial by jury must always depend on the willingness of each individual juror to seek the truth about the facts from the same evidence presented to all the jurors; and to arrive at a verdict by applying the same rules of law as given in the Court's instructions.

# FINAL INSTRUCTION NO. 2

It is your duty to find from the evidence what the facts are. Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

Court's Draft Final Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# FINAL INSTRUCTION NO. 3

I have mentioned the word "evidence." The "evidence" in this case consists of the testimony of witnesses, the documents and other things received as exhibits, and the facts that have been stipulated — that is, formally agreed to by the parties.

You may use reason and common sense to draw deductions or conclusions from facts which have been established by the evidence in the case.

Certain things are not evidence. I will list those things again for you now:

1. Statements, arguments, questions, and comments by lawyers representing the parties in the case are not evidence.

2. Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If I sustained

5

an objection to a question, you must ignore the question and must not try to guess what the answer might have been.

3. Testimony that I struck from the record, or told you to disregard, is not evidence and must not be considered.

4. Anything you saw or heard about this case outside the courtroom is not evidence.

Finally, if you were instructed that some evidence was received for a limited purpose only, you must follow that instruction.

Court's Draft Final Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# FINAL INSTRUCTION NO. 4

Also, some of you may have heard the terms "direct evidence" and "circumstantial evidence." Do not be concerned with those terms. The law makes no distinction between direct and circumstantial evidence. You should give all evidence the weight and value you believe it is entitled to receive.

Court's Draft Final Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# FINAL INSTRUCTION NO. 5

In deciding what the facts are, you will have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, consider several things: the witness's intelligence; the opportunity the witness had to have seen or heard the things testified about; the witness's memory; any motives that witness may have for testifying a certain way; the manner of the witness while testifying; whether that witness said something different at an earlier time; the general reasonableness of the testimony; and the extent to which the testimony is consistent with any evidence that you believe.

A caution about considering a witness's demeanor while testifying. Many folks are nervous just being in court. And there are bold liars and shy truth-tellers. Use your common sense and

8

be discerning when judging someone's credibility based on their demeanor on the stand.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things. You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

Court's Draft Final Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

# FINAL INSTRUCTION NO. 6

As I told you at the start of trial, you need to know a few terms of law to answer some of the fact questions in this case. Here, again, are definitions of those legal terms.

- *Essential job functions* are the fundamental duties of Downing's job. Marginal functions are not essential functions of the job.

- *Equivalent* means virtually identical in terms of pay, benefits, and working conditions, including privileges, perquisites, and status. It must involve the same or substantially similar duties, skill, effort, responsibility, and authority.

- An *actual disability* is a physical or mental impairment that substantially limits one or more major life activities.

  - *Substantially limits* is a broad term. An impairment can be substantially limiting even though it doesn't prevent Downing from performing a major life activity.

10

Impairments or effects of impairments that last (or are expected to last) less than six months may be substantially limiting. In deciding whether an impairment substantially limits a major life activity, you should compare Downing's ability to perform the major life activity with an average person's ability.

- *Major life activities* include (but aren't limited to) performing manual tasks, walking, standing, lifting, bending, and working.

• Downing was *regarded as having a disability* if he had an actual or perceived physical impairment, regardless of whether the impairment limits or is perceived to limit a major life activity.

- Downing cannot be regarded as having a disability if his impairment was transitory and minor.

11

- A transitory impairment is one with an actual or expected duration of six months or less. (This is unlike an actual disability, which doesn't have a time limit.)

• Downing's disability (whether actual or perceived) was a *motivating factor* if that disability played a part in the Department's decision to fire Downing.

• An *accommodation* is a modification to the work place that allows a person with a disability to perform the essential functions of the job or allows the person to enjoy the same benefits and privileges as an employee without a disability.

• A *reasonable accommodation* is one that could reasonably be made under the circumstances and may include (but is not limited to): job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; and other similar accommodations. Reasonable accommodation does not

12

include creating a new position or bumping another employee in order to reassign a disabled employee. Reasonable accommodation also does not necessarily mean the accommodation requested or preferred by Downing.

- *Undue hardship* means significant difficulty or expense to the Department. Some things to consider are:

  - The nature and cost of the accommodation;

  - The number, type, and location of the Department's various facilities;

  - The financial resources of the Department's facility that would be involved in providing the accommodation; the number of employees at that facility; and the overall impact of the accommodation on that facility;

  - The financial resources and size of the Department itself;

13

- The type of work the Department performs, including the structure and functions of the Department's workforce.

# FINAL INSTRUCTION NO. 7

This case is submitted to you on questions. Your answers to these questions will be your verdict in this case.

The questions ask whether or not you find certain facts. You may find a fact only if it has been proven by a preponderance of the evidence.

The burden of proving a fact is placed upon the party whose claim or defense depends upon that fact. The party who has the burden of proving a fact must prove it by a preponderance of the evidence. To prove something by a "preponderance of the evidence" is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more believable.

If, on any issue of fact in the case, the evidence is equally balanced, you cannot find that fact has been proved. The

15

preponderance of the evidence is not necessarily established by the greater number of witnesses or exhibits a party has presented.

You've probably heard of the term "proof beyond a reasonable doubt." This is a stricter standard, which applies in criminal cases. It does not apply in civil cases like this one. You should, therefore, put it out of your minds.

Downing has the burden of proof, by a preponderance of the evidence, on these disputed factual issues:

- The Department, Haugen, and Justice refused to reinstate him to the same or a substantially similar job after he returned from leave.

- He had an actual or perceived disability that the Department, Haugen, and Justice knew about.

- He could perform the essential functions of his job both at the time he returned from FMLA leave and at the time he was fired, with or without a reasonable accommodation.

16

- He was fired solely because of an actual or perceived disability, or his actual or perceived disability was a motivating factor in the Department's decision to fire him.

- After returning from leave, he requested and was denied a reasonable accommodation.

- He was fired solely because he sought a reasonable accommodation.

The Department, Haugen, and Justice have the burden of proof, by a preponderance of the evidence, on these disputed factual issues:

- Downing would have been fired even if the Department, Haugen, and Justice had not considered his disability in its decision to fire him.

- Accommodating Downing would have imposed an undue hardship on the Department.

# FINAL INSTRUCTION NO. 8

In conducting your deliberations and returning your verdict, there are certain rules you must follow. I will list those rules for you now.

*First*, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Court's Draft Final Instructions
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict.

*Third*, if you need to communicate with me during your deliberations, you may send a note to me through the court security officer, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone—including me—how your votes stand numerically.

*Fourth*, your verdict must be based solely on the evidence and on the law that I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

*Finally*, the Question form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room; and when each of you has agreed on the answers, your foreperson will fill in the form, sign and date it, and advise the court security officer that you are ready to return to the courtroom.

The court security officer, and all other persons, are forbidden from communicating in any way with any member of the jury on any subject touching the merits of this case. Also, you are never to reveal to any person, not even to the Court, how the jury stands, numerically or otherwise, on the issues presented to you unless or until you reach a unanimous verdict.

## COURT SECURITY OFFICER OATH

Court security officer, do you solemnly swear to keep this jury together in the jury room, and not to permit any person to speak to or communicate with them concerning this case, nor to do so yourself unless by order of the Court or to ask whether they have

20

agreed on a verdict, and to return them into the courtroom when

they have so agreed, or when otherwise ordered by the Court, so

help you God?

# (4) VERDICT FORM

# QUESTIONS

1. Were Downing's pre-leave and post-leave jobs equivalent?

    Yes \_\_\_\_        No \_\_\_\_.

2. When Downing returned from leave, was he able to perform the essential functions of his pre-leave job?

    Yes \_\_\_\_        No \_\_\_\_

3. Did Downing have an actual disability?

    Yes \_\_\_\_        No \_\_\_\_

    If you answered "yes," did the Department know about Downing's disability?

    Yes \_\_\_\_        No \_\_\_\_

4. Whether Downing was actually disabled or not, did Bob Haugen or David Justice regard Downing as having a disability?

    Yes \_\_\_\_        No \_\_\_\_

5. At the time Downing was fired, did his hip-related restrictions prevent him from being able to perform any essential job functions?

- 2 -

Yes _____ No _____

6. Was Downing fired solely because of an actual or perceived disability?

Yes _____ No _____

**If you answered "yes" to Question 6, skip Question 7.**

7. Was Downing's actual or perceived disability a motivating factor in the Department's decision to fire Downing?

Yes _____ No _____

If you answered "yes," would the Department have fired Downing even if it had not considered his disability?

Yes _____ No _____

**Answer the remaining Questions only if you found (see Question 3) that Downing was actually disabled and that the Department knew it.**

8. After returning from leave, did Downing seek an accommodation for any disability?

Yes _____ No _____

- 3 -

9. At the time Downing was fired, could he have performed the essential functions of his job with a reasonable accommodation?

Yes _____     No _____

If you answered "yes," would providing the accommodation have created an undue hardship on the Department?

Yes _____     No _____

10. If you conclude that Downing requested an accommodation (see Question 8), was he fired solely because he sought that accommodation?

Yes _____   No _____   Inapplicable _____

Sign and date this form.

_____          _____
Foreperson                                    Date & Time

- 4 -

# (5) DAMAGES INSTRUCTION AND QUESTION

Court's Draft Rehab Act
Damages Instruction and Question
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

## INSTRUCTION NO. 9

Based on your answers to the Court's Questions about liability, Downing has prevailed on his claim under the Rehabilitation Act. You must now award Downing a sum that you find will fairly and justly compensate him for his damages you find he sustained as a direct result of the Department's conduct. Damages include:

- Wages and fringe benefits you find Downing would have earned in his employment with the Department if he hadn't been fired. This amount should reflect the time period of 4 June 2014 (when Downing was fired) through today. You must subtract any earnings and benefits that Downing received from other employment during that time. Award only a net loss amount; and

- Mental anguish, inconvenience, and other nonmonetary losses. If you find that Downing suffered any of these, you must enter separate amounts for each type and must not include the same items in more than one category.

- 2 -

Court's Draft Rehab Act
Damages Instruction and Question                    4:15-cv-570-DPM
29 March 2018                                *William Downing v. DFA et al.*

Downing has a legal duty to "mitigate" his damages—that is, to exercise reasonable diligence under the circumstances to minimize his damages. Therefore, if you find that Downing failed to seek out or take advantage of an opportunity that was reasonably available to him, you must reduce his damages by the amount of the wages and fringe benefits Downing reasonably could have earned if he had sought out or taken advantage of such an opportunity.

Downing must prove his damages by a preponderance of the evidence. Remember, throughout your deliberations, you must not engage in any speculation, guess, or conjecture. And you must not award any damages as punishment or because of sympathy.

If you do not find that Downing's damages have monetary value, then you must return a verdict for Downing in the nominal amount of One Dollar.

Court's Draft Rehab Act
Damages Instruction and Question
29 March 2018

4:15-cv-570-DPM
*William Downing v. DFA et al.*

## QUESTION

State the amount of Downing's damages (as that term is defined in Instruction No. 9) from the Department's decision to fire Downing on 4 June 2014.

Wages and fringe benefits: $_____

Mental anguish, inconvenience,
& other nonmonetary losses: $_____

Sign and date this form.

_____          _____
Foreperson                           Date & Time

- 4 -

Court's Draft Rehab Act
Damages Instruction and Question          4:15-cv-570-DPM
29 March 2018                      *William Downing v. DFA et al.*